PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TWO BRIDGES, LLC, | ) | |
| | ) | CASE NO. 4:20CV2759 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CITY OF YOUNGSTOWN, | ) | |
| | ) | **ORDER** |
| | ) | [Resolving ECF Nos. 25, 26, 29 31, 32] |
| Defendant. | ) | |

Pending before the Court are the parties' cross motions for summary judgment and related motions. The motions are fully briefed. Having been duly advised by the parties' filings and the applicable law, the Court will enter the following judgments. The Court denies both of Plaintiff's motion to strike, grants partial summary judgment in favor of Defendant City of Youngstown as to Count I, and partial summary judgment in favor of Plaintiff as to Defendant's Statutory Immunity Defense. Plaintiff's federal constitutional claim, Count II, remains and will proceed to trial.[1]

## I.   Background

Plaintiff, Two Bridges LLC, is the owner of real property and a structure located at 15 Oak Hill, Avenue, Youngstown, OH that was purchased in 2019. ECF No. 25-2 at PageID #: 252. The structure and property were vacant for six years prior to Plaintiff's purchase. ECF No.

---

[1] Defendant's motion to stay (ECF No. 29) is denied as moot.

(4:20CV2759)

25-2 at PageID #: 250. The building was a historic structure, initially built in 1910. ECF No. 25-2 at PageID #: 262.

In the months after Plaintiff's purchase, the City of Youngstown began to inspect the building and issue citations. On April 3, 2019 the City of Youngstown sent a letter to Plaintiff, stating that the structure on the property was a public safety issue. ECF No. 25-2 at PageID #: 349. An inspection held on May 23, 2019 resulted in citations demanding that Plaintiff had to bring the property into compliance. See ECF No. 25-2 at PageID #: 350. This inspection mentioned a variety of violations, including that unkempt weeds on the property, broken windows, issues with the exterior walls, rodent harborage, and trash issues. Id. A follow-up inspection occurred on July 9, 2019. Similar violations were indicated. ECF No. 25-2 at PageID #: 353. Mr. Eiselstein states that he was not immediately aware of these inspections or citations, but when he became aware of them, he filed an appeal with the Property Maintenance Board on August 7, 2019. ECF No. 25-2 at PageID #: 295-297. The appeal record indicates that Plaintiff had fixed some of the issues mentioned. ECF No. 25-2 at PageID #: 357. Despite these issues, Plaintiff's Representative, Ronald Eiselstein argues that Plaintiff had plans to develop the waterfront property and was in talks with multiple possible companies that may have been interested in developing the between March-November 2019. See ECF No. 25-2 at PageID #: 281-282.

In January 2020, a citizen alerted the Fire Department that, after a windstorm, bricks were flying off the building into the public roadway. ECF No. 25-1 at PageID #: 113; ECF No.

2

(4:20CV2759)

25-2 at Page ID #: 291-292. According to Eiselstein, these bricks were cleaned up and stored inside of the building, and that the city was called and told that everything was fixed. ECF No. 25-2 at Page ID #: 291-292.

Moreover, at some point prior to June 12, 2020, the building was inspected by Michael Durkin, the Code Enforcement and Blight Remediation Superintendent of the City of Youngstown. Mr. Durkin took photographs of the building which were provided at ECF No. 28-1. The exact date of the photos is not clear from the facts before the Court. What appears to be copies of the same photographs were attached to the Depositions of Fire Chief Barry Finley, and Ronald Eiselstein. Regardless of when the photos were taken, is clear from the photographs that the building in question was in an obvious state of disrepair at the time the photographs were taken.

On June 12, 2020, Youngstown Fire Chief Barry Finley and Blight and Remediation Code Enforcement Superintendent Michael Durkin visited the building to determine if it was a fire hazard. During that visit, Chief Finley and Mr. Durkin inspected the roof of the building from the bucket of the lift of a firetruck. During the inspection Chief Finley and Mr. Durkin noticed that between 6-12 inches had "come[] down" on the roof. ECF No. 25-1 at PageID #: 112. Chief Finley is not an engineer, and admits that he would not know why the roof was sagging down. ECF No. 25-1 at PageID#: 114. Plaintiff asserts that the roof had been repaired shortly after purchase. ECF No. 25-2 at PageID#: 268.

After the inspection on June 12, 2020, Chief Finley declared the building an unsafe fire hazard and prepared a demolition order. The demolition order dated the same day states that the

3

(4:20CV2759)

reason for the demolition was "Main Roof sagging towards the middle" and "Façade bricks not secure." See ECF No. 27-1 at PageID #: 421.

Plaintiff was not notified of this demolition order. In fact, on June 18, 2020, six days after the building had been marked for demolition, Plaintiff's appeals with the Property Maintenance Appeals Board were still pending. ECF No. 25-2 at PageID #:359. Additionally, in the weeks after the issuance of the demolition order, the Health Commissioner of the Youngstown City Health District was actively investigating the building, including baiting for rats in July 2020 prior to authorizing that the building be abated. ECF No. 25-2 at PageID#: 361.

The building was demolished on August 22, 2020, 71 days after the demolition order issued. Plaintiff's representative Mr. Eiselstein discovered that the building was scheduled for demolition while watching the news on the Thursday night before the demolition occurred the following Saturday. ECF No. 25-2 at PageID #: 306.

The demolition in question was authorized by City Ord. 1525.01.(c), which provides the Fire Chief with the authority to order the emergency demolition of any building deemed to be unsafe. Chief Finley asserts that the building was unsafe and that he had the authority to demolish it under the City Ordinance. ECF No. 27 at PageID #:419.

## II. Motions to Strike ECF Nos. 31 and 32

Plaintiff has filed ECF No. 31 a motion to strike photographs attached to the affidavit of Michael Durkin because the affidavit does not have any evidence of the date(s) on which the

4

(4:20CV2759)

photographs were taken.  *See* ECF No. 28-1.  Defendant did not respond to this motion.  Having reviewed the docket, the Court makes the following ruling.

Although Plaintiff asks the Court to strike the photographs attached to Michael Durkin's affidavit, Plaintiff attached the very same photographs to both Plaintiff's copy of the Deposition of Fire Chief Finley, and the Deposition of Roland Eiselstein that Plaintiff itself filed with the Court.  Compare ECF No. 25-1 at PageID#: 177 with ECF No. 28-1 at PageID#: 439.  Also compare ECF No. 25-1 at PageID #: 203-204; ECF No. 28-1 PageID #: 465-466.  Therefore, Plaintiff seeks to strike, for lack of relevance, evidence that Plaintiff itself had previously filed with the Court.  Additionally, the Court may give the photographs the weight they deserve, given the uncertainty of the date(s) on which the photographs were taken and the unavailability of the building due to demolition.  Accordingly, ECF No. 31 is denied.

Plaintiff has also filed ECF No. 32 seeking to strike the affidavit of Fire Chief Finley (ECF No. 27).  Plaintiff asserts multiple grounds for the motion to strike, to wit: the Fire Chief's affidavit and deposition conflict, and that Chief Finley is not an expert under Rule of Evidence 702.  The purported inconsistent statements of Fire Chief Finley go to weight rather than admissibility, so the Court will not strike the affidavit.  Also, under the Youngstown City Ordinance in question in this case, City Ord. 1525.01(c), it is the opinion of the city's fire chief that triggers a determination of whether a building is unsafe.  Therefore, any evidence of Chief Finley's opinion or explanation of his opinion, is relevant.  Accordingly, ECF No. 32 is denied.

(4:20CV2759)

### III. Standard of Review

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Scola v. Publix Supermarkets, Inc., 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. Scott v. Harris, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. Id. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists." Malee v. Anthony & Frank Ditomaso, Inc., No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (citing Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds). "'[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is

6

(4:20CV2759)

undisputed." *Malee,* No. 1:16CV490, 2018 WL 1805402, at *2 (quoting Fed. R. Civ. Pro. 56(e)(2)).

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder.  *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

### IV.    Analysis

Plaintiff seeks summary judgment on all claims.  Defendant seeks summary judgment on Plaintiff's State Constitutional Claim, Plaintiff's Federal Constitutional Claim, and Defendant's

7

(4:20CV2759)

affirmative defense of statutory immunity. The Complaint pleads two Counts.[2] In Count One, Plaintiff prayed that the Court would declare the City Ordinance that Defendant used to demolish Plaintiff's building to be in conflict with the general laws of the state of Ohio and unconstitutional. In Count Two, Plaintiff alleged a claim under 28 U.S.C. Section 1983 and the Fourteenth Amendment. Also at issue, is Defendant's affirmative defense of statutory immunity against all of Plaintiff's federal claims. The Court will address each of these issues in turn.

### A. Count 1: Plaintiff's State Constitutional Claim

The Complaint seeks to declare the City Ordinance that gave Fire Chief Finley the authority to demolish the building without notice unconstitutional. Plaintiff claims that the city ordinance is unconstitutional because it conflicts with a state ordinance. Under Section 2 Article XVIII of the Ohio Constitution, Ohio is a "Home Rule" state, meaning that Plaintiff's state constitutional claim is subject to a three part test. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." See Mendenhall v. Akron, 881 N.E.2d 255, 260 (Ohio 2008).

In this case, the relevant city ordinance reads as follows:

> "1525.01 REMOVAL OR REPAIR.
> (a)   Any structure, which in the opinion of the Fire Chief, is unsafe, a nuisance, unsanitary, deficient in adequate exit ways, which constitutes a fire hazard, or is otherwise dangerous to human life or the public welfare, shall be deemed an unsafe structure.

---

[2] This case was removed from state court.

8

(4:20CV2759)

    (b)   Any vacant structure, unguarded or open at the door or window, may be deemed a fire hazard and unsafe structure within the meaning of this Code.
    (c)   The Fire Chief shall cause to be posted at each entrance to an unsafe structure a notice that the structure has been deemed to be unsafe. In the case of an emergency, the Fire Chief may order the demolition of any unsafe structure as defined herein.  It shall be unlawful for any person to enter such structure except for the purpose of securing the structure or demolishing of the same.
    (d)   Emergency Mitigating Measures.  The Fire Chief may employ the necessary labor and materials to perform the required work to render any unsafe structure, temporarily safe.
    (e)   Costs of Emergency Repairs and Demolition.  Costs incurred in carrying out the provisions herein shall be collected pursuant to Section 1525.06 ."

City Ord. 1525.01(c)

The relevant statute is Ohio Revised Code 715.26 which reads as follows:

"Any municipal corporation may:

(A) Regulate the erection of buildings or other structures and the sanitary condition thereof, the repair of, alteration in, and addition to buildings or other structures.

(B) Provide for the inspection of buildings or other structures and for the removal and repair of insecure, unsafe, or structurally defective buildings or other structures under this section or section the Revised Code. At least thirty days prior to the removal or repair of any insecure, unsafe, or structurally defective building, the municipal corporation, or its agent pursuant to an agreement entered into under division (E) of section 715.261 of the Revised Code, shall give notice by certified mail of its intention with respect to such removal or repair to the holders of legal or equitable liens of record upon the real property on which such building is located and to owners of record of such property. The owners of record of such property or the holders of liens of record upon such property may enter into an agreement with the municipal corporation, or a county land reutilization corporation organized under Chapter 1724. of the Revised Code that is serving as the municipal corporation's agent, to perform the removal or repair of the insecure, unsafe, or structurally defective building.  If an emergency exists, as determined by the municipal corporation, notice may be given other than by certified mail and less than thirty days prior to such removal or repair.  If for any reason notice is not given, the lien provided for in section 715.261 of the Revised Code as a result of such removal or repair is valid but shall be subordinate to any liens of prior record. If notice is provided in accordance with this section, a lien under section 715.261 of the Revised Code for such

9

(4:20CV2759)

>  removal or repair is effective on the date the municipal corporation or county land reutilization corporation incurred expenses in such removal or repair.
>
>  (C) Require, regulate, and provide for the numbering and renumbering of buildings by the owners or occupants thereof or at the expense of such municipal corporation.
>
>  (D) Provide for the construction, erection, operation of, and placing of elevators, stairways, and fire escapes in and upon buildings;
>
>  (E) Contract for the services of an electrical safety inspector, as defined in section 3783.01 of the Revised Code, to conduct inspections of electrical installations within the municipal corporation;
>
>  (F) Whenever a policy or policies of insurance are in force providing coverage against the peril of fire on a building or structure and the loss agreed to between the named insured or insureds and the company or companies is more than five thousand dollars and equals or exceeds sixty per cent of the aggregate limits of liability on all fire policies covering the building or structure on the property, accept security payments and follow the procedures of divisions (C) and (D) of section 3929.86 of the Revised Code."

O.R.C. § 715.26

Using the three-part test, Defendant focuses on the first part of the test, arguing that there is no contradiction between the ordinance and the statute in question. Plaintiff argues that the statute and ordinance conflict, but makes no specific argument as to the remaining two prongs.

Plaintiff's argues the city ordinance is in conflict because the statute (O.R.C. § 715.26(B)) mandates: "If an emergency exists, as determined by the municipal corporation, notice may be given other than by certified mail and less thirty days prior to such removal…." Essentially, Plaintiff's argument is that the statute contemplates that some form of notice must be given prior to demolition. This argument is without merit, however, because the very next sentence of the statute contemplates that it is possible that destruction occurs without notice.

(4:20CV2759)

That sentence states, "[i]f for any reason notice is not given, the lien provided for in section 715.261 of the Revised Code as a result of such removal or repair is valid but shall be subordinate to any liens of prior record." O.R.C. § 715.26(B) This portion of the state statute explicitly contemplates that there are situations in which notice is not given.

Considering both sentences in the statute together, it appears that the statute contemplates that there may be situations in which no notice is given for a deprivation. Therefore, a city ordinance that does not require notice to be given, does not conflict with the statute in question. Plaintiff has not provided any valid argument that contradicts this reading of the statute.

Accordingly, the Court finds in favor of Defendant on Count 1 because Plaintiff has failed to demonstrate that there is a conflict between the city ordinance and the relevant state statute or meet any remaining component of the three-part test.

### B. Count Two: Plaintiff's Procedural Due Process and Section 1983 Claims

Plaintiff's remaining claim is that, through enforcing the city ordinance, Defendant violated Plaintiff's federal constitutional rights of procedural due process, in violation of 42 U.S.C. § 1983. Defendant is a municipality, and municipalities may be held liable for the constitutional violations of their employees only when the municipality's policy or custom led to the violation. The threshold question is whether there was a Constitutional violation. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also Morgan by next friend Morgan v. Wayne Cnty., Michigan*, No. 21-1411, 2022 WL 1315190, at *5 (6th Cir. May 3, 2022).(citations omitted).

11

(4:20CV2759)

In this case, Plaintiff claims that the specific constitutional right at issue is the right to procedural due process. The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

To prove a § 1983 procedural due process claim, the plaintiff must establish that (1) he has a life, liberty, or property interest protected by the Due Process Clause, (2) he was deprived of this protected interest, and (3) the state did not afford him adequate procedural rights prior to depriving him of his protected interest. See Durham v. Martin, No. 21-5099, 2021 WL 6777028, at *5 (6th Cir. Nov. 23, 2021) (citations omitted). Essentially, procedural due process contains the opportunity to be heard "at a meaningful time and in a meaningful manner" with the most basic notice of the deprivation and an opportunity to meet it. Garcia v. Fed. Nat. Mortg. Ass'n, 782 F.3d 736, 741 (6th Cir. 2015). See also Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976).

Defendant argues that Sixth Circuit case law has foreclosed Plaintiff's claim at the threshold issue, because the Circuit has held that demolition of a building on an emergency basis does not violate federal due process rights. For this proposition, Defendant relies on the case Harris v. City of Akron which held that pre-deprivation process is not required when the circumstances necessitated quick action or makes efforts to provide meaningful pre-deprivation process impracticable, given that the State provides adequate post-deprivation procedure. 20 F.3d at 1401 (6th Cir. 1994).

*Harris* however does not stand alone, because it is progeny of the *Parratt* Doctrine, which does not always apply to every case. See Parratt v. Taylor, 451 U.S. 527, 539 (1981).

12

(4:20CV2759)

*Parratt* stood for the proposition that when there is an adequate post-deprivation remedy there is not necessarily the need for a pre-deprivation remedy. *Id*. The holding in *Harris* that Defendant relies on was an extension of *Parratt*. However, there are cases in which *Parratt* does not apply, *i.e*, when a deprivation occurs through an established state procedure, then it is both practicable and feasible for the state to provide pre-deprivation process." *Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 508 (6th Cir. 2020). When there is actually no emergency condition or necessity for quick action, and nothing prevented the municipality from providing pre-deprivation process, *Harris* does not apply, because city officials may not deny citizens due process by falsely invoking an emergency need for quick action. *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 614 (6th Cir. 2015).

Moreover, there have been other district courts in similar situations that declined to follow *Harris* because the circumstances that necessitated quick action in *Harris* were substantially different from the facts of those cases. *See, e.g., Jaber v. City of Akron*, No. 1:15-CV-728, 2015 WL 9258617, at *3–4 (N.D. Ohio Dec. 18, 2015). The court in *Jaber* refused to follow *Harris*, because there were key factual differences between the facts in *Harris* and the facts before the court in *Jaber*. *Id*. For example, in *Harris,* the building demolition took place very quickly on the same day that the city was notified of the potential building hazard, whereas in *Jaber*, Akron did not demolish Jaber's building until a full twelve hours after learning about the building's hazardous condition. *Id*. Also in *Harris* there was a concern about the building falling on an occupied home, but in *Jaber* there was no imminent threat of danger to another structure. Moreover, in *Harris*, the Defendant sought to contact the owner of the building, and in *Jaber* no attempts were made. *Id*.

The facts in the present case are far from the factual situation in *Harris*. In this case, it undisputed that Defendant took not hours, nor days, but months, (a total of 71 days) to demolish

13

(4:20CV2759)

Plaintiff's building after declaring it was fit for demolition. It is also undisputed, that no attempt was made to notify Plaintiff of the pending demolition or provide Plaintiff with the demolition order. Moreover, there is no imminent harm to others like the possible damage to an occupied home in *Harris*. In this case, it is also undisputed that the building at issue sat vacant and unoccupied for six years prior to Plaintiff purchasing the property.

Furthermore, regardless of whether there was an emergency present when the building was scheduled for demolition, that it took 71 days to demolish the building, eroded any foundation that so called emergency stood on. Moreover, in the time since the building was scheduled to demolished, city employees continued to investigate the property.

There are genuine disputes of material fact as to whether there were pre-textual reasons to demolish the building or if there was in fact an emergency in this case that required demolition without notice. There are also disputes of material fact as to why the any pre-deprivation notice was impracticable.

Accordingly, the Court cannot provide either party summary judgment on Plaintiff's Procedural Due Process claim, because there are genuine disputes of material fact related to the threshold question of whether there was a constitutional violation in this case.

### C. Defendant's Statutory Immunity Defense

Defendant argues that it is entitled to statutory immunity from Plaintiff's federal claim due to the statutory immunity provided by Ohio Revised Code § 2744. Plaintiff counters that its claim falls under the carve out for constitutional claims under Section 2744.09(E).

Under Ohio Revised Code § 2744, municipalities have immunity for cases brought against them.

> "A political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision

14

(4:20CV2759)

>or an employee of the political subdivision in connection with a governmental or proprietary function."

O.R.C. § 2744.02(A)(1)

Defendant City of Youngstown is a political subdivision, under the statute, because Section 2744.01(F) defines "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Therefore, Defendant would generally have immunity from suit pursuant to Section 2744.02(A)(1).

Plaintiff seeks to escape this immunity shield, by arguing that another portion of the statute, 2744.09 (E) provides a carve out for the instant case. The exception states specifically:

>"This chapter does not apply to, and shall not be construed to apply to, the following: … Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions. "

O.R.C. § 2744.09 (E)

Plaintiff's federal claim falls under Section 1983 and alleges a violation under the Constitution of the United States and, at first sight, appears to fall into the exception in the statute. Defendant, however, asserts that Plaintiff's claim does not fit within the exception by relying on a line of state cases concerning wrongful demolitions. Defendant argues that these cases stand for the proposition that assertions of constitutional violations raised in the context of a wrongful demolition are insufficient as a matter of law to invoke this exception to immunity. *See* ECF No. 26 at PageID #: 416. However, this argument is without merit. In the state cases cited by Defendant, the plaintiffs (in those cases) failed to properly state a federal claim, so the

15

(4:20CV2759)

defendants could invoke immunity. Defendant stretches the reach of these cases too far when it relies on them as a broad ban on all constitutional cases related to wrongful demolitions.

For example, in the case Defendant chiefly relies on, *Campbell*, the plaintiff failed to properly state a federal claim by not asserting that the officials sued acted under color of state law. *See Campbell v. City of Youngstown*, 2007-Ohio-7219, ¶ 21. Also, in the line of cases that *Campbell* relies upon, it was always the poor pleading of the plaintiffs that barred the plaintiff's claims, not a bar on procedural due process claims for all wrongful demolition cases. *See generally*, *Bram v. City of Cleveland*, 647 N.E.2d 523 (Ohio 8th Dist.1993)(finding that a plaintiff could not side step the political subdivision tort immunity by adding a vague constitutional claim about due process in the second amended complaint); *Browning v. City of Chillicothe*, 4th Dist. Ross No. 95-CA-2086, 1995 Ohio App. LEXIS 5838, at *22 (Dec. 20, 1995)(finding immunity when a claim for wrongful demolition merely incorporated allegations of a constitutional deprivation (*i.e.*, lack of notice), but sounded in tort); *Broadview Mtge. Co. v. Cleveland*, 8th Dist. Cuyahoga No. 61939, 1993 Ohio App. LEXIS 1548, at *9 (Mar. 18, 1993)(refusing to find that plaintiff asserted a federal claim where the federal components were not present in the Complaint but only raised in vague and undefined ways in an evidentiary hearing).

Conversely, there is ample authority for the finding that pursuant to R.C. 2744.09(E), the immunities found within R.C. Chapter 2744 do not apply to Section 1983 actions. *See Meekins v. City of Oberlin*, 2018-Ohio-1308, ¶ 20; *Summerville v. City of Forest Park*, 943 N.E.2d 522

(4:20CV2759)

(Ohio 2010); *Derrico v. Moore*, No. 1:17CV866, 2019 WL 1876960, at *16 (N.D. Ohio Apr. 25, 2019).

In this case, Plaintiff has properly pleaded a procedural due process violation under Section 1983 in Count II of the Complaint. *See* ECF No 1-2 at PageID #: 7. Accordingly, the Court finds that Defendant cannot assert statutory immunity to protect it from Plaintiff's federal constitutional claim, because Plaintiff's claim properly fits under the exception to statutory immunity in 2744.09 (E).

### V. Conclusion

Accordingly, the Court denies both of Plaintiff's motions to strike, denies the motion to stay as moot, grants partial summary judgment in favor of Defendant as to Count I, and partial summary judgment in favor of Plaintiff as to Defendant's Statutory Immunity Defense. Plaintiff's federal constitutional claim, Count II, remains and will proceed to trial.

IT IS SO ORDERED

| | |
|---|---|
| May 10, 2022 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

17